Good morning, Your Honors. May it please the Court, Jennifer Katz from the Maryland Attorney General's Office. I represent the appellant, the State of Maryland, and the State of Maryland Attorney General's Office. And the cross appellee, the former State's Attorney of Worcester County of Maryland, Bo Oglesby. The District Court erred for at least three reasons by allowing a Title VII claim to proceed against the State. You represent the State of Maryland? Yes. How about the defendant, Oglesby, do you represent him too? Correct. Okay. In the cross appeal. Okay, good. Yes. Thank you. No inconsistency there, I take it? No, no inconsistency. The State is being sued for pretty much the same allegations on which the claims were brought against State's Attorney Oglesby. But we'll get to that. The District Court erred for at least three reasons by allowing a Title VII claim to proceed against the State under a third-party retaliatory interference claim, which is the count nine of the Second Amended Complaint. First, Title VII's anti-retaliation provisions plain text limits retaliation claims to those charging an employer with retaliating against his employees. This Court has acknowledged the limiting use of the possessive his, as has the Supreme Court. Second, the third-party claim against the State is barred by Eleventh Amendment immunity, because there is no express congressional intent to abrogate the State's immunity for conduct State officials not taken as employer under Title VII. And third, the claims against the State should not be permitted to proceed on the same absolute immunity grounds for which the prosecutor is immune from suit. The express language of Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against any of his employees or applicants for employment because the employee has opposed an unlawful employment practice under Title VII. By using the possessive his, Congress cabined the reach of Title VII's anti-retaliation provision to an employer's own employees, not any employee covered by the statute, which is what Mr. Savage is alleging against the State. Can I ask you a question? Of course. Assuming just for a minute and entirely hypothetically that I think the third-party interference theory is the best reading of Title VII's more general anti-discrimination, which is framed differently, the text is different, any individual rather than his employees. Can you think of any conceivable reason why Congress would have intended those two disparate outcomes, why Congress would have wanted a plaintiff to be able to sue a non-employer for race discrimination, effectively by interfering with his employment relationship, but not for retaliation? Happy to answer that question. Speaking as against the State, I think both claims would be barred by Eleventh Amendment immunity. But speaking about perhaps in a private employer context like in the Sibley Memorial Hospital case, the anti-discrimination provision is more broadly worded. And I think that the one reasonable explanation for cabbing the anti-retaliation provision is because in order to enforce the Title VII law, an employee has to come forward, has to make a complaint, has to make a charge of discrimination, make an internal complaint. And in that case, the employer exercises such broad control over the employee that the reason behind the anti-retaliation provision is to protect the employer's employees from further discriminatory conduct based on retaliation. So it doesn't work, or it doesn't necessarily work, where the employee is not the employee of the employer, to have the anti-retaliation provision apply in a third-party context. Right there, he can file an action against an employer, but can he at all? He also can file Title VII action against another entity, a third-party entity. Well, not against the State, because in Title VII, what Congress clearly, as the Supreme Court has ruled, Congress clearly abrogated- What about Oglesby? Let's talk about- Well, Oglesby is being sued under Section 1983 and not under Title VII. The claim against Bo Oglesby was a 1983 claim, and those are the claims that the District Court applied, the absolute immunity bar. What's the underlying basis for the 1983 claim? The underlying basis for the-well, there are two alleged activity on behalf of State's Attorney Oglesby. The first is the reading of potential trial evidence in a trial preparation meeting. And then the second is the decision to- The underlying legal basis. What is the law- Oh, the underlying legal basis. I'm sorry. My apologies, Your Honor. I believe there was a First Amendment retaliation claim and then a Section 1993 hostile work environment claim. And so those- Hostile work environment arises under- It's the equal protection claim, I would think, under 1983. I mean, that's the allegation. I mean, I think you would still have to be that person's employer even under 1983 because I think it's the same test that's applied to an anti-discrimination claim under Title VII. But those are the legal basis for his claims against State's Attorney Oglesby. And those are the claims for which the court, the District Court, properly determined that absolute immunity barred those claims because the conduct at issue was taken within the role of the State's Attorney acting in his prosecutorial discretion, both in reading trial evidence at a trial preparation meeting. And although there was an allegation in the First Amendment complaint that this was an investigatory meeting, the publicly available docket sheet shows that an indictment had been filed. The State and the defendant had been engaged in discovery. There was a motion to suppress that had been filed. So clearly this is trial preparation. And the Supreme Court has said categorically that conduct taken in the role of prosecutor preparing for trial, evaluating evidence, obtaining evidence, that's all protected by absolute immunity. But the problem is when you argue these cases, that's why I asked who you're representing. You put them all together. They're really different legal analysis for Oglesby than the State of Maryland. And when you conflate them, you have me going all over the place and getting lost in the middle of your argument. That's why I wanted you to differentiate the Oglesby defense from the State of Maryland. Understood. If you were to address it from whether Oglesby is entitled to absolute immunity, the considerations there would be? The considerations there would be, as I was just describing, the conduct relating to the trial preparation meeting would be that he was engaged in trial prep. And then the conduct alleged as to the first member retaliation claim is that the allegation. The first one, you're saying trial preparation, absolute immunity. Yes. Which seems to flow. But then the retaliation aspect of it is the question of whether Oglesby gets immunity if it is shown in a light most favorable to the non-moving party that he was seeking to impugn salvage his credibility and destroy his law enforcement career. Then your answer to that is he gets immunity for that too? You have to look at the conduct that's alleged. The Supreme Court has made clear that the immunity analysis looks at what conduct is the prosecutor engaged in and not whether it's. Not the motive. Intimately associated with a judicial phase. And what is intimately associated with a judicial phase for someone to seek to destroy a law enforcement career or one's credibility? What does that have to do with judicial?  So the conduct here is that in response to what State's attorney Oglesby believed to be false statements made by Mr. Savage, that he generated a policy whereby the cases on which Mr. Savage was an investigator would be analyzed differently before they were prosecuted. And essentially he would not be calling Mr. Savage to testify because of Brady concerns. He would have to inform defense of particular impeachment evidence. And because of that, he determined that he would not call him in future trials. That is conduct that was within his prosecutorial discretion as an advocate for the State. Was that just it? We got a little Brady problem, he would not call you on those kind of cases? I thought he did a little more than that. Walking through the conduct, that was the policy that he instituted. He informed the city officials in the letter to the city officials, he said, due to concerns about Mr. Savage's credibility. I'm not you know, these cases are going to be evaluated this way. If there's no corroborating evidence and we have to rely on his testimony, I'm likely not to proceed with the case. That's a prosecutorial decision. There is a bare allegation on information and belief in the complaint that State's Attorney Oglesby said to the city manager. And now we're talking about a full, over a full year after the alleged speech that took place where Mr. Savage has filed an attorney grievance complaint against Mr. Oglesby in July of 2014. Now we're in October of 2015. There is an allegation on information and belief in the complaint that Mr. Oglesby expressed a view to the new city manager that Mr. Savage should be terminated from his employment. In the summary judgment record, both alleged participants to that alleged conversation have denied and sworn declarations that that statement ever took place. And so you know, there's really nothing to be discovered on that point. And that's why it's important to look at the conduct. I mean, if you think about the different conduct that a prosecutor has absolute immunity for can be, you know, Brady violations, suborning perjury, even coaching a witness to lie that can result in significant and severe deprivations of liberty of criminal defendants. So you don't look at whether the conduct was lawful. You don't look at whether it was hurtful. You look at the conduct itself. What is the nature of the conduct? Is it being undertaken in his role as advocate for the state? And because it's clearly related to his prosecutorial decision-making, it is. I just want to be really clear. I understand everything you're saying. But so as to the allegation that in addition to Brady listing the officer and telling the city that he was Brady listed, he also said, and you should fire him. Well, that allegation, your answer is? As to that allegation, my answer is it's not retaliatory because it comes a full year after the attorney grievance complaint is filed. Whether he should have immunity as to that allegation. I'm sorry, not whether he can state a claim. I think if he's expressing a view that because of this person's credibility concerns, he's of no use to our office, that's falls within the immunity analysis. But, you know, certainly there are cases where prosecutors are engaged in all sorts of egregious attempts to have people fired from other jobs, defaming them in conversations with new employers. That was held not to fall within the immunity. All one in the same. Brady listing you, therefore you're going to lose your job. That's correct. But in addition, even if this court were inclined to think that that statement is divorced from the policy decision and could be the basis of a claim that's not barred by immunity, that's where the summary judgment record comes in. I don't know how you would admit this. Summary judgment record? I thought this was on a motion. The motion was to dismiss or on the alternative for summary judgment. There was not discovery. There was not discovery. There were declarations attached to the motion to dismiss or on the alternative for summary judgment. Mr. Savage's attorney filed a Rule 56D affidavit in opposition, laying out areas where he thought additional discovery would be necessary before a judgment could be rendered on a summary judgment motion. The district court, in granting the motion, didn't designate whether it was granting the motion to dismiss or the motion for summary judgment. My point is that there's nothing to send it back for in discovery, because if all of the other conduct is protected by absolute immunity, then you're going to have limited depositions into was this statement made, and both people who are allegedly privy to the conversation have said this statement was never made. Depositions are different from affidavits, right? Isn't that why people, even after you get an affidavit, you might want to take a deposition? I mean, that's certainly true, but that would be, you know, you could allege anything in a complaint to get beyond the absolute immunity bar so that you can get to depositions for a fishing expedition into something that was really the decision. What you're challenging is the exercise of the prosecutorial immunity. Excuse me, of the prosecutorial decision making. But I would like to also, I mean, in addition to the immunity bar that bars the claims against States Attorney Oglesby that should have been applied to the state, there are other very important reasons why the state cannot be the subject of a third party retaliatory interference claim. I've talked about the plain text of the statute limiting the scope of that provision to an employer's own employees. And in Bender v. Suburban Hospital, this court acknowledged in a footnote that that case involved a third party discriminatory claim, which was rejected by this court. But in the footnote, when it talked about the anti-retaliation provision, they said quite clearly for a complaint to state a claim under Section 2000E-3A, which is the anti-retaliation provision. We don't allow municipalities to take advantage of employees' common law immunities under Section 1983. Why should the state be allowed to take advantage of those same immunities under Title VII? The issue with the 1983 claim, and the Supreme Court has talked about this, is that the individual immunities don't flow to the municipality because of the difference, the distinct nature of an individual capacity and an official capacity lawsuit. In an individual capacity lawsuit, you're suing a person for their own particular conduct, for the tortious nature of it. In a municipality claim, you're suing the municipality for a pattern of practice, not for the individual conduct of one person that may have harmed you. And because of that, immunities don't flow to the municipality, and damages also don't flow to the municipality. Here, and of course, Congress didn't abrogate the state's sovereign immunity in 1983, and so here what would be the result is that you could bring a respondeat superior lawsuit against the state, essentially, under Title VII, something that you could never do in Section 1983. So you're not challenging the state's policy or practice. All you're doing is challenging the action of this one state official, which you can't bring that claim against the state under 1983, and because the state is not his employer, you cannot bring that claim under Title VII. That's just – We've got a few minutes left, or if you want to reserve – Yeah, I had reserved some time for rebuttal. I may just finish my affirmative argument and then take whatever time is left. But in addition to the plain text of the anti-retaliation provision, you have the 11th Amendment immunity concerns. Before I move on to that, the plain text, I just wanted to point out that in Robinson v. Shell Oil, and that's 519 U.S. 337, the Supreme Court interpreted the term employees in Title VII's anti-retaliation provision. And although they held that the his, the more narrow his employees didn't limit the scope of that term temporally, the Supreme Court did explain that so his employees could include his former employees while still excluding persons, quote, who have never worked for the particular employer being charged with retaliation. So in addition to the plain text, barring this sort of third-party retaliatory interference claim against the state, there's also the 11th Amendment immunity concerns because, again, Title VII did not clearly abrogate the state's sovereign immunity for actions – for being vicariously liable for actions of a state employee or a state official when not acting as employer. And so as the First Circuit and Second Circuit have recognized there would be – these 11th Amendment concerns would be animated if you had an anti-discriminate – excuse me, a third-party discrimination claim against the state. Here we have the step further removed of it being a retaliation claim. So I will reserve my, I think, three minutes for rebuttal, but those are the reasons on which we would ask this Court to reverse the district court's denial of the state's motion to dismiss. We'll hear from the athlete. Good afternoon, Your Honors, and may it please the Court. My name is Dennis Corkery, and I'm here on behalf of Cross Appellant Franklin Savage. Mr. Savage respectfully urges this Court to reverse the district court's dismissal of his claims against Mr. Oglesby, but affirm the district court's decision to allow him to proceed with his claims against the state. The district court erred below in finding that Bo Oglesby escapes all accountability after he gratuitously unnecessarily used the N-word to humiliate and taunt Mr. Savage, publicly disclosed his negative opinion about Mr. Savage to Pocomoke City's mayor and city council, and conspired with Pocomoke City officials to terminate Mr. Savage's employment in retaliation for his protected complaints of discrimination. However, the district court was correct below in finding that Mr. Savage can maintain his Title VII claim against the state for Mr. Oglesby's involvement in the termination of Mr. Savage's promising law enforcement career. In starting with immunity, I think it's important to point out what actually we are challenging. Absolute prosecutorial immunity, yes. Not 11th against Oglesby and the state. Let's just deal with Oglesby. Sure, sure. We'll start with Oglesby. I think it's important to note what we are and are not challenging here. We are not challenging Mr. Oglesby's decision to not call Mr. Savage as a witness. What we are challenging is his communication of that decision and his interference with his employment. And the letter that he sent. Which is the retaliatory part of it? Yes. You're not challenging prosecutorial immunity. Judge Evers, I'm sorry, I just want to make it clear. In terms of his evidentiary review where he used the N word in there reading something. You're not challenging that? We are challenging that as well as a count under the 14th Amendment. I want to make, but that's an evidentiary review. And then the decision in terms of whether to call him for testifying. That's one aspect of it. And then there's that other aspect that goes into what the opponent seemed to indicate. You didn't, some of you did by information and believe or whatever. But it's in the claim. I guess that depends on whether it's 12B6 or not. Dealing with whether, you know, impinging his credibility and his ability to be able to continue to work. Correct. So taking in their, yes, there's the hostile work environment for during the evidentiary meeting. And then there is the decision, which we are challenging. The decision to not call him as a witness we are not challenging. But the actions he took after he made that decision are what we're challenging. Go to that. Okay. So what we're challenging is that the letter that he sent about his negative opinion about Mr. Savage. That was not a Brady letter. It was not sent to a criminal defendant. Indeed, it was not even sent to Mr. Savage's superior in the police force or Pocomoke City manager. Instead, it was sent to the mayor and the Pocomoke City Council. And a reasonable inference can be drawn at this stage that this is a public statement that he is making about Mr. Savage's credibility and what he believes about Mr. Savage's credibility. Can I ask you a question? Yes. If the state's attorney fires one of his own employees, say an investigator, because he thinks the investigator is not credible, it's false information, he can't use it anymore. So in addition to Brady listening, this investigator, he also fires the investigator. Would you say that is covered by prosecutorial immunity? No, and I think that the force— Why not? He can't use him. He's giving him false information. What is he supposed to do? Just, like, send him off on a paid leave for the rest of his time? I would point to the Supreme Court decision of Forrester that directly says that terminating a district attorney would not be— Right, but Forrester clearly doesn't have in mind something where the reason for the termination is so intimately linked to the judicial process. You're not credible. I can't use you in court. Therefore, I'm firing you. That's not what Forrester's about. Well, I think that there are decisions— What do you think a state's attorney should do in a position like that? Can't use the guy in court. Lies all the time. Can't use him in court. Sure, can't fire him, but there are other positions that can be used. Certainly, there are other things he could have done as a police officer. My concern about your argument, and it's probably obvious from my hypothetical, is you have a lot of very sympathetic arguments to make. I have an additional concern that we don't want to disincentivize prosecutors from being attentive to credibility concerns that they may have with police officers, with investigators, with people like that. And we don't want to expose them to liability when they seek to remedy real credibility problems with some of their law enforcement-affiliated witnesses. So I'm trying to get from you, is there anything practical that a prosecutor could do here? Because I don't think trying to send someone to Xerox instead of testifying is a very good answer. There certainly are other things. I mean, Mr. Oglesby could have communicated with Chief Sewell about his concerns. He could have certainly led Chief Sewell to lead an independent investigation of Mr. Savage's credibility. And I'd also point out that Mr. Oglesby would not just be automatically on the hook, but that the default would be qualified immunity for an employment action. So it's not that prosecutors would have no automatically that they are on trial. But it is a weird world, right, where a prosecutor gets absolute immunity for violating Brady. But when a prosecutor tries to comply with Brady, then he's subject to more liability. Well, I think that absolute immunity is very narrowly drawn to the specific functions it's designed to protect. And that's why we're not challenging his decision. We agree that he has a Brady obligation to not call Mr. Savage if he personally believes that it's not credible. But it's how he communicates that decision that he doesn't get absolute immunity for that. The same way that in Buckley a prosecutor's decision to bring criminal charges are absolutely immune, but his public statements about those criminal charges don't receive the same extreme immunity here. And I think that further the conversation between Mr. Oglesby and Mr. Crowfoot about whether or not Mr. Savage should be fired, that certainly is an employment conversation and not a prosecutorial conversation. And, yes, at the lower court there was a motion to dismiss and a motion for summary judgment. We have submitted Rule 56D, Request for Discovery, about testimonial deposition discovery into what happened there. And I think I'd point, too, that in the lower court, Horkamuk City defendants have said that had it not been for Mr. Oglesby's actions, they would have not fired Mr. Savage. So I think there's enough that we can – this isn't just a fishing expedition about what conversations happened between Mr. Crowfoot and Mr. Oglesby, that there is a lot that can be dug into about what he said about whether or not Mr. Savage could be fired. What did the district court hear? 12B6 or was it summary judgment? The district court erred in not granting us discovery on summary judgment and also the district court erred under 12B6 that our claim states – Which is it? Which is it? We'd say 12B6, that we have stated a claim and that it should not have entertained the motion for summary judgment. I guess it's both on DeNova Review, so I guess it erred on both. Don't get into summary judgment unless there's some evidence or some type of determination you made there. I mean, if it's just on the complaint and the pleadings, it's one thing. Right, it is just on the complaint and pleadings. I mean, we have – on the complaint, the district court erred that we have stated a claim that does not allege conduct that triggers absolute immunity. As to summary judgment, there is a dispute of fact about what happened in the conversations, and therefore because of the dispute of material fact, there is – judgment should not be proper in favor of Mr. Oglesby and should proceed to further discovery. I'd also like to point out that a witness prep room cannot be a blank check for a hostile work environment. Mr. Savage is not challenging that Mr. Oglesby chose to review evidence or what evidence he eventually used in any judicial proceeding. What he's challenging is the way that a prosecutor treats his coworkers. And when Mr. Oglesby was using a piece of evidence as a racist weapon against someone with whom he was working in a room full of people that had already engaged in a campaign of racism against him, and especially using the N-word as a weapon against Mr. Savage through his career in the joint drug task force, that he turned that into an employment moment because he was – I mean, it was about the harassment of his coworkers. And by allowing absolute immunity for a prosecutor working with his coworkers while reviewing evidence, simply because he was doing a job that a prosecutor does would extend absolute immunity beyond its purpose of protecting the integrity of the criminal system and instead mean it would be a protection of the prosecutor himself. Can I ask you about the reading of the letter, sort of going back to the basics here? Because I guess you have the reading of the letter under your 1983 claim against Mr. Oglesby. That's the basis for the racial harassment claim. And then in terms of retaliation, it's the reading of the letter. There has to have at least – for that to have been protected activity, there has to at least be a reasonable belief that that was – that the reading of the letter constituted or created a racially hostile environment in violation of Title VII. So one way or another, it's all about the reading of that letter. And so I guess my question for you is how you get around reading in the Supreme Court case, which seems to be sort of remarkably in our line of work, really close to on all fours, reading out loud a document in the course of a meeting. In that case, it was sexually offensive language. And the supervisor uses the language, but in the context of reading a letter – it wasn't a letter, I'm sorry. It was a job application form or something. And the Supreme Court says not only is that not a sexually hostile environment, there's not even any reasonable belief that it could be so that you can bring a retaliation claim based on a complaint about it. So how do you deal with that case? I think for several reasons. I think one is that is a – that situation only had – that was one joke in the letter that was made about it. The plaintiff there didn't even admit that – she admitted she didn't even find it harmful when she heard it. And I think that the use of the N-word has consistently, throughout jurisprudence, been held to a different level of its – Those are cases where it's actually used against a person or in some other kind of context that's sort of per se insulting, whereas here he's reading out loud a letter that the plaintiff actually gave him, right? Well, I think that if the – The context seems very different. Yes, certainly. But the allegation is that the way, the manner in which he was reading this letter, that he was using the N-word and placing unnecessarily emphasis on it for the purpose of humiliating Mr. Savage. And I think there are certainly in other hostile work environment contexts where, you know, if all it takes is for an employee to pick up something else and read it, and that would escape liability for the use of – for a hostile work environment just because they were reading someone else's words would eviscerate the point of hostile work environment protection. So the allegation – But you can read and the Supreme Court is not saying anytime you read someone else's words it doesn't count. It's when it's sort of reasonably related to the job. You have to read these things. You know, it's not like I'm reading out loud a joke I got in the mail. It's I'm reading out loud this employee application, which is what we do here in this meeting. Correct. But that, again, that was just read out loud just that once, and there was no allegation in the facts of that case that it was done in any way that had sort of a particular emphasis or repeated use. I'm sorry, we can move on. But the allegation is you didn't just read it out loud. You stopped. You made a joke about it. Like it was really – you did emphasize it. You made a sexist joke about it. Understood. And for the purpose of time, I'll just say that the – that here the allegations of the use of the N-word – For the purpose of time, your case does not depend on that. And your problem is that that could have been just as egregious as your client says it is, but we have a cold record in front of us. All we know as a prosecutor is reading a letter that says exactly what it says using the N-word. It could have been all kind of other facial stuff in there that could note racism everywhere in the world, but the record is not reflecting it. That's the problem you've got with that. But your case doesn't depend just on that. So why would you spend time – Well, because, in fairness, because if there's not that, the whole case goes away. If no reason – That's true? Yeah. If it's not that, you don't have retaliation? Not if no reasonable plaintiff could have thought that it was creating a hostile work environment, right? I agree that, yes, it has to be a reasonable belief, and I think after Boyer-Liberto, what constitutes a reasonable belief in this circuit has been expanded, certainly, than what it previously had been. Let me make sure I understand. Yes. If you don't have that, you have no case? If there is no – if Mr. Savage had no reasonable belief that he was engaged in a hostile work environment, we have no Title VII case. However, under the First Amendment, his protests of race discrimination don't hinge upon whether or not that is a reasonable belief in a violation of Title VII. I said Title VII. Yes. Crucial to Title VII case. And in turning to Title VII, first, absolute immunity is not a defense to Title VII. And, yes, the common law immunities that don't apply under 1983 do have involved in the Nell claim where there is a pattern in practice. But Congress wrote Title VII to be a vicarious liability statute. So that – and there are other rationales of why common law immunities don't apply, that there's been a waiver of sovereign immunity in the statute, that there needs to be availability of redress, apply just as much to the state in this context as they would to a municipality sued under Section 1983. But – and so, actually, the claim under Title VII, Mr. Savage has alleged an adequate claim using the EEOC's third-party interference framework. And Mr. Oglesby here had sufficient control over Mr. Savage's employment, such that he had an employment relationship that would be covered by the terms of Title VII. And I think if you look at the actual Brady obligations that he had himself, that shows, that demonstrates the control that he had. Again, we agree that he had an obligation under Brady to control whether or not Mr. Savage could testify, but that also means that he had such control over Mr. Savage and a vital part of his ability to do his job such that the state had a relationship here covered by Title VII. And it would be an employment relationship that is a – within a broad reading of what covers employment. And so are you arguing that the state is his employer under Title VII? We are arguing that the state had a sufficient employment relationship here such that it would trigger Title VII protections under the third-party interference framework. Okay. So you're not arguing that we could construe employer broadly enough to reach the state here as to the plaintiff? We're not saying that the state was Mr. Savage's direct employer. We're not even saying that it was a joint employer. But we're saying it was – he had a sufficient control under the third-party interference framework. Because the third-party interference framework assumes it's not his employer. Yes, correct. And sufficient control. And that control that it reflects a broad reading of Title VII that this Court endorsed in the Butler because it is part of the remedial reading of Title VII as – excuse me, a broad reading of Title VII as a remedial statute and also because it reflects the reality of a modern workplace where there are plenty of individuals like Mr. Savage who aren't sitting at their desk all day but are out in the field encountering other entities that have a certain level of control over them. And therefore, they need Title VII protection from the – from discrimination and retaliation that they may face from those other entities. I would add that the EEOC found reasonable cause here that Mr. Savage's – excuse me, Mr. Ogilvie's conduct violated Title VII and that third-party interference is a valid part of the compliance manual for over three decades. But the compliance manual is talking about the general anti-discrimination prohibition, right, not the retaliation provision? That is true. The compliance manual only self-references Section 703, status discrimination. But here in its application of the compliance manual, it did apply Section 704. And I would also note that one sister circuit has applied third-party interference to Section 704. That would be Christopher v. Strouder Memorial Hospital. And that Court actually made the – sort of asked the question that you asked, Judge Harris, about why would Congress not include as many people under Section 704, 703. And it answered that that wouldn't make sense for the purposes of the retaliation provision, which is to provide teeth to the status discrimination provision, and that without the anti-retaliation provision, Title VII would never be able to reach its ultimate goal. And that's also why the Supreme Court has consistently read Section 704 broadly. And just quickly turning to the Eleventh Amendment argument. Your time is up. I have a few minutes for my rebuttal. I can readjust it then. Oh, you did do a sir rebuttal, didn't you? Yes. I'll be brief. I just wanted to put a little bit more context into the reading of the April 7th letter. Again, this is not the State's attorney using this word against a particular person, characterizing a person he's reading verbatim from trial evidence that Mr. Savage himself brought to the meeting, and he paused midway to say, if anyone is offended, feel free to leave the room. Breeden certainly, I think, covers this scenario, where this is part of the natural terms and conditions of a police officer's employment, that he's going to be exposed to offensive language. A prosecutor could be describing heinous sexual assault, which could trigger somebody's experience. These just aren't the sorts of things that prosecutors should be concerned about when they're in a trial preparation meeting. Am I going to be sued because I'm reading evidence verbatim? And I would like to say that this Court has applied common law immunities in the Title VII context. In McRae v. MDOT, this Court concluded that the State entities would be immune under absolute legislative immunity under Title VII from conduct of State officials taken during budgeting process, because that was legislative conduct. So there is precedent for applying common law immunities under Title VII, where the purposes animating those immunities are present. Here, too, they're present. Again, as Judge Harris pointed out, a prosecutor can't be concerned that every time he Brady lists a police officer, the State is going to be – either he's going to be on the hook under 1983, or the State's going to be on the hook under Title VII. I mean, the same purposes animating that are here, too. If we determine that Mr. Oglesby is entitled to absolute immunity for his evidential review, which includes the use of the N-word during that time period, and for the testimonial aspect of it not allowing, what happens to the rest of this case? I think the whole case goes away because all of that conduct is related to his decision to Brady list the officer. The letter he sends to the Mayor and City Council, which, by the way, are the officials responsible for operation of the Police Department under the Worcester County Charter, he communicates that decision. He doesn't make it to the press. He doesn't make it publicly. He sends his communication to city officials responsible for the Police Department. And in the context of when the city manager calls him to say, now, a year later, is this policy still in effect? And Mr. Oglesby says, yes. The allegation is that at that point in time he expresses his view that, you know, Mr. Savage should be terminated from employment. So if there is sufficient evidence that, in fact, there was some form of retaliation, the fact that the underlying basis there didn't exist means there can't be retaliation? I'm sorry, I don't follow. In other words, if it is shown that there was an animus and a part of Mr. Oglesby in impinging upon his credibility and going out of his way to ensure he gets fired, and that's violative as being retaliatory, but you're saying the basis upon which it would rest would mean he can't be held to be responsible for that because what he did was immune, he was immune from? That is the basis of the, that is the crux of the absolute immunity analysis in this realm. I see my time's up, but I'll just briefly respond if that's okay. The Supreme Court has said we don't look for the motive behind the conduct. We look at the conduct, what was the function of the prosecutor at the time the conduct was taken. We don't examine the motive. We don't examine why prosecutors suppress evidence. We don't examine why a prosecutor might suborn perjury that would lead to serious deprivations of liberty. It's not about the motive. It's not about whether the conduct was lawful or harmful. It's about the nature of the conduct when the act was taken. Was he acting in his prosecutorial discretion? And with that, thank you. You have any more questions? All right. We don't always get sir rebuttal, but we'll hear that today. All right. Thank you, Your Honors. Again, I want to respond to the State's 11th Amendment argument in that it's a red herring. Either third-party interference exists under Title VII or it doesn't. The State has not identified a single case where a State has been held immune from liability under the 11th Amendment for conduct that would otherwise be unlawful for a private employer under Title VII. And when Congress enacted the Equal Employment Opportunity Act of 1972 and put State governments as defendants for Title VII, they did that there full stop. And there are limited carve-outs in Title VII that apply to certain aspects of State government, such as who could be a State government employee covered by Title VII, but not what conduct State governments are and are not liable for. And so Congress was clear that any conduct that is unlawful under Title VII is unlawful as to State governments, and it did so using the 14th Amendment powers. Briefly responding to just what the State brought up about reviewing evidence and stifling prosecutors' review of evidence, that it's still prosecutors, though, should not then be off the hook from having an obligation for those who they work to not engage in unlawful harassment. And those obligations cannot just be put down simply because they're doing their jobs in a meeting about evidence. That would eviscerate the protections afforded under Title VII and the civil rights statutes. And I think, finally, one sort of last policy point on the absolute immunity is that Supreme Court has cautioned that extending absolute immunity for situations where there is no judicial check needs an extra level of scrutiny. A criminal defendant has several levels of checks on prosecutorial misconduct, trial judge, post-trial appellate proceedings, but Mr. Savage was not on trial. And the only check he has against Mr. Oglesby's actions is this lawsuit. So if there are no further questions, I'll give you more time. Thank you, Mr. Cochran. Thank you, Ms. Katz. The Court is going to stand to be adjourned, and then we'll come down to Greek Council and recess until tomorrow. The Court stands adjourned until this afternoon at 2.30. God save the United States and this audible Court.
judges: James A Wynn, Jr., Henry F. Floyd, Pamela A. Harris